# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LU VANG YANG,<br><br>           Plaintiff,<br><br>     vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>           Defendant.<br>_____/ | CASE NO. CV-F-04-6465 REC LJO<br><br>**FINDINGS AND RECOMMENDATIONS RE MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 12) |

Plaintiff Lu Vang Yang ("claimant") seeks judicial review of an administrative decision denying her claim for Disability Insurance Benefits under the Social Security Act, Title XVI ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on October 27, 2004 and her opening brief on June 13, 2005. The Commissioner filed her opposition to the appeal on September 7, 2005. Claimant filed a reply brief on September 21, 2005.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Supplemental Security Income under the Social Security Act on May 11, 2001. (Administrative Record "AR" 129-133.) She alleges a disability onset of December 31, 1999 due to a clogged heart valve, HBP, arthritis, shortness of breath and back pain. (AR 130.)

Claimant's application for benefits was denied and denied upon reconsideration. (AR 111-114, 116-119.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on October 9, 2002. (AR 103-107.) The Appeals Council remanded the case for further review by the ALJ. (AR 108-110.) Following a supplemental hearing on February 24, 2004, the ALJ issued a decision on June 3, 2004, denying claimant's claim for disability. (AR 21-28.) The Appeals Council denied review. (AR 12-14.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background and Work Experience

Claimant was born on July 5, 1950. (AR 130.) She does not have any education and does not speak English. She does not have any past relevant work.

## Medical History

The pertinent medical history is summarized as follows.

Clamant received medical treatment from Mountain Family Health Care Center from March 2000 to October 10, 2001 and from December 10, 2001 to February 56, 2002. (AR 234-262, 319-320.) A radiological report on March 14, 2000, of the right shoulder showed mild degenerative change of the acromioclavicular joint; of the cervical spine showed unremarkable results; and the lumbosacral spine showed mild degenerative spondylosis. (AR 254-255.) She had no complaints on May 24, 2000. (AR 251.) She complained of arthritis pain on December 13, 2000. (AR 247.) Treatment notes noted obesity along with cardiac dysfunction. (AR 246.) A chest x-tray on March 29, 2001 showed no acute cardiopulmonary disease, a small fibrocalcific density in the right upper lobe. (AR 241.) An upper gastrointestinal series revealed mild rugal fold thickening of the stomach with no evidence of gross ulcerations or mass lesions. (AR 235.) A barium enema examination on August 10, 2001 was normal. (AR 237.)

On May 31, 2000, and again on December 7, 2000, claimant under went a treadmill stress test. (AR 218-219.) She failed to achieve 85% of predicted maximal heart rate. (AR 210-218.) She did not have significant chest pain or ECG changes. (AR 218-219.) On May 22, 2001, an echocardiogram demonstrated normal left ventricular size and systolic function with borderline left ventricular hypertrophy. (AR 217.) There was no echocardiographic evidence of pulmonary hypertension or

pericardial effusion. (AR 217.) Conservative treatment was recommended and no additional medications. (AR 210.)

On August 6, 2001, claimant presented for a consultative internist examination by Rustom Damania, M.D. (AR 263-268.) She complained of right elbow injury and pain, palpitations and some shortness of breath. (AR 263.) Dr. Damania noted moderate obesity; hypertension with no clinical evidence of end organ damage. (AR 268.) On examination, he did not find objective evidence for gross physical disability, she was fully ambulatory. Dr. Damania opined that clamant could perform a normal eight hour work day with normal breaks, and that she could lift at least 50 pounds occasionally and frequently. There were no postural or manipulative restrictions. (AR 268.)

On September 28, 2001, a state agency physician, Brian Ginsburg, M.D., completed the Physical Residual Functional capacity Assessment form. (AR 269-276.) Dr. Ginsburg opined that claimant could lift and carry 50 pounds occasionally and 25 pounds frequently. (AR 270.) She can stand/sit/walk 6 hours in an eight hour day. No other limitations were found.

Claimant was also seen at Kings Winery Medical Clinic from 1999 to 2002. (AR 284-318.) She reported having back pain, shoulder pain, hip pain. (AR 284, 286, 294, 295, 297, 314.) She was diagnosed in March 2002 with post traumatic stress disorder. (AR 288-289.) She was treated with psychotropic medications. (AR 287-289, 362-365, 367, 369-370, 372.)

Claimant began receiving treatment from Fresno County Mental Health in April 2002. (AR 321-336, 375-423, 434-463.) She reported being depressed. She participated in a Hmong support group. (AR 321). In a treatment note on July 26, 27, 2002, claimant reportedly played a game called Poke, similar to Bingo. She was smiling, interested and looked less depressed. (AR 321.) Claimant also played other games such as Dominoes, Trouble, Uno and Aggravation. (AR 378, 399, 401, 412, 414-416, 423.)

In July 2002, Charles Phillips, M.D., completed a medical report limiting claimant to lifting and carrying up to ten pounds occasionally, sitting for three hours in an eight-hour workday, and standing for three hours in an eight-hour workday. (AR 337-339.) Dr. Phillips precluded claimant from any postural activities. (AR 340.) His diagnosis was based on low back sprain/hypertension/ elevated cholesterol/right heel spur; right hip traumatic osteoarthritis/war injury and headaches. (AR 337.)

On August 1, 2002, Maximo Parayno, M.D. completed a mental medical report. Dr. Parayno stated that claimant is alert but disoriented to time and place and forgetful and diagnosed post traumatic stress disorder. (AR 342.) Dr. Parayno stated her progress was fair and her ability to perform work related activities as fair to poor. (AR 343-345.)

Claimant appeared for a psychological evaluation on October 2, 2003 with Richard Engeln, Ph.D. (AR 424.) Dr. Engeln administered various psychological tests. (AR 424.) On interview, her affect was cheerful, verbal expression was easily understood and no evidence of mental or emotion illness. (AR 427.) Her memory was borderline, verbal intelligence was in the mild range of mental retardation, visual intelligence measured in the moderate range of mental retardation. (AR 427.) Dr. Engeln opined that the scores were obtained thought examinations that have cultural bias dimensions. (AR 427.) Dr. Engeln opined that claimant was verbally, cognitively and socially capable of job adjustment in a context where instructions are unidimensional and normal supervision provided. (AR 427.) Concentration and social skills are adequate for work adjustment in that she has educational retardation and not mental retardation issues. (AR 427.) He opined that she is able to receive simple instructions and not technical or complex instructions. (AR 427.)

On February 23, 2004, Dr. Parayno completed another mental assessment form. (AR 464-470.) He opined that claimant has a depressive disorder and anxiety disorder. (AR 464.) He noted that she is isolated and withdrawn, and does not socialize outside her family. (AR 470.) He opined she has moderate or marked limitations of daily living, social functioning and of adaptive functioning. (AR 466.)

On February 12, 2004, John Lugenuy, M.D. of Kings Winery Medical Clinic, (AR 469), opined that chronic back pain, fibromyalgia, and chronic pain precluded claimant from performing even sedentary work. (AR 469.) He opined that claimant is able to sit 30 minutes and stand/walk 3 hours and lie down for 3 hours in an eight hour day. (AR 469.)

### **Hearing Testimony**

Claimant testified that she lives with her husband and 3 children. (AR 72.) She said her husband does not work and gets disability benefits. (AR 72.) Before she became ill, she did all the cooking, but now the children do the chores. (AR 72.) She does the dishes, weeping and light cooking. (AR 73.)

She drives to the grocery store. (AR 73.) She does some light walking during the day between 9:00 and 10:00 a.m. (AR 74.) She does not watch TV because it depresses her. (AR 75.) She use to watch Hmong TV, but she does not have cable anymore. Now she listens to Hmong radio. (AR76.) She is less depressed when she listens. She visits her daughter and her six grandchildren. (AR 78.) She visits about once a week. (AR 79.) She testified that her arm hurts and that the pain travels to her waist. (AR 80.) She has problems with her heart. She has an inhaler and it helps. (AR 81.) She does not have a reaction to her medication. (AR 81.) She goes to mental health meetings once a week and they help. (AR 82.) They talk and play games. (AR 82.) She testified she does not know a doctor named Luvenko. (AR 83.)

## ALJ Findings

In his June 3, 2004 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 21.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 27-28):

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
2. The claimant's joint pain and depressive disorder, not otherwise specified, are considered "severe" based on the requirements in the Regulations. 20 CFR §416.920(b).
3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.
4. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
5. The claimant has the residual functional capacity for simple, repetitive medium work activity.
6. The claimant has no past relevant work. 20 CFR §416.965.
7. The claimant is an "individual closely approaching advanced age." 20 CFR §416.963.
8. The claimant is "unable to communicate in English." 20 CFR §416.964.
9. The claimant has the residual functional capacity to perform substantially all of the full range of medium work. 20 CFR §416.967.

10. Based on an exertional capacity for medium work, and the claimant's age and vocational background, Medical-Vocational Rule 203.18, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

11. The claimant's capacity for medium work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above cited rules as a framework for decision-making the claimant is not disabled.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. 20 CFR §416.920(g).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) inadequately considered the impairments, (2)

improperly reviewed the evidence at steps 3 and 5, (3) improperly reviewed claimant's testimony, (4) did not give proper weight to the treating physicians' opinions, and (5) improperly developed the mental health record.

## The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4. If the claimant's impairment is not listed, determination of whether the impairment

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985).

prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5. If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, claimant convinced the ALJ that she met the criteria in step one of the sequential analysis; that she has not been engaged in substantial gainful employment.

At step two, the ALJ must determine if the impairment is severe. The ALJ determined that the medical evidence establishes severe impairments of joint pain and depressive disorder. (AR 22.)

Claimant argues that the ALJ did not find any of her other impairments severe, such as obesity, back pain, heel spurring, arthritis, fibromyalgia, asthma, post traumatic stress disorder. (Opening Brief p. 3.)

The Social Security regulations define severe impairment as an impairment which significantly limits a claimant's "ability to do basic work activities." 20 C.F.R. §§§§ 404.1521, 416.921; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "Basic work activities" are defined as including such capabilities as walking/sitting/standing/lifting, 20 C.F.R. § 404.1521(b)(1),(2); understanding, carrying out, and remembering simple instructions, 20 C.F.R. § 404.1521(b)(3); use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to supervision, co-workers and usual work situations, 20

---

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

8

C.F.R. § 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6). If the impairment does not significantly limit a claimant's physical or mental ability to do basic work activities, the impairment is not severe. *Bustamante v. Massanari*, 262 F.3d at 955

The mere existence of an impairment is insufficient in and of itself to satisfy a showing that the impairment is so "severe" as to preclude substantial gainful employment. *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir.1982). The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *See Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996). If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. *See Smolen v. Chater,* 80 F.3d at 1290. Reasonable doubts on severity are to be resolved in favor of the claimant.

Pursuant to Social Security Rule 85-28:

> "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. Thus, these basic work factors are inherent in making a determination that an individual does not have a severe medical impairment."

SSR 85-28 further provides "At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. "

The ALJ accepted the impairments as noted above as severe, but did not find that these impairments precluded her from all work. As to the other impairments which the ALJ found were not severe, there is substantial evidence in the record to support the ALJ findings. The medical evidence, here, did not establish the existence of a severe medically determinable impairment. The ALJ identified all the pertinent medical history supportive of the finding of nondisability. Indeed, the ALJ meticulously analyzed the objective medical evidence. (AR 22-24.) The ALJ reviewed the medical evidence related to her heart problem. He reviewed the results of the treadmill tests: "she had no evidence of chest pain

with exercise, no significant Echocardiographic changes with exercise, nor atrial or ventricular ecotpy with exercise." (AR 22.) He noted she denied chest pains. He reviewed the records that the echocardiogram which revealed normal left ventricular size and systolic function, no evidence of pulmonary hypertension or significant pericardial effusion. (AR 22.) He noted that she was treated conservatively. (AR 22.)

The ALJ reviewed the evidence from Mountain Family Health Care related to management of hypertension, reactive airways and degenerative osteoarthritis and chest pain and other ailments. (AR 23.) He noted the unremarkable findings of her cervical spine, mild degenerative spondylosis of the lumbar spine and other unremarkable findings. (AR 23.) Thus, the ALJ provided a comprehensive outline of the facts and clinical evidence. There was no error in the ALJ rejecting the severity of claimant's other impairments.

Claimant argues that the ALJ should have considered her obesity.

An ALJ must consider obesity in determinations of disability. *Hammock v. Bowen*, 879 F.2d 498, 503-504 (9th Cir.1989) (en banc). See also Social Security Ruling 02-01P (discussing the evaluation of obesity in disability claims), superceding Social Security Ruling (No. 00-3p). SSR 02-01P states, that as the initial step in the sequential evaluation process, "when establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build." (SSR 02-01P, para. 4.)

While the SSR states that the Social Security Administration will evaluate effects of obesity, it remains claimant's burden to show that obesity has some effect on her functional capacity. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.) Claimant must come forward with some evidence of how her obesity limits her functioning. *Burch v. Barnhart*, 400 F.3d at 683 ("Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.")

Neither any other treatment notes nor any other diagnoses addressed claimant's limitations due to obesity. Moreover, claimant did not present any testimony or other evidence at her hearing that her

obesity impaired her ability to work. See Social Security Ruling 02-01P ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.")

### **The ALJ's Finding of Residual Functional Capacity**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found that plaintiff had the residual functional capacity to perform medium work. Under the applicable regulations, "medium work" is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 CFR §§404.1567( c) and 416.967( c). "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

Claimant argues that the ALJ erred in rejecting the limitations imposed by her treating physician, Dr. Phillips.

Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth

11

Circuit has held that a treating physician's opinion is generally to be afforded great weight in disability cases because he or she ". . . is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). However, a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989).

The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the treating physician's opinion:

> "The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Id.* Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing."

*Rodriquez,* 876 F.2d at 762. This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *but see Allen v. Heckler*, 749 F.2d 577, 579-80 (9th Cir.1984) (articulating a narrow exception; where there is a conflict between the findings of the treating and non-treating physicians, and the non-treating physician's opinion is based on a thorough examination and objective clinical tests, findings by the ALJ that the plaintiff is not disabled will be considered supported by substantial evidence).

The ALJ noted that although Dr. Phillips submitted a medical report indicating that claimant was limited to sedentary work on a part-time basis, he only based his opinion on tenderness of multiple joints, an elevated cholesterol level and x-ray of the left hip, which was negative. (AR 23, 337-341.) An ALJ may reject a medical opinion based on lack of objective medical evidence. *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (treating physician's conclusory opinion was properly rejected where record contained little objective evidence of impairment). Accordingly, the ALJ reasonably concluded that Dr. Phillips' restrictive assessment appeared to be an accommodation in an attempt to help claimant.

(AR 23.)

Moreover, while Plaintiff contends that Dr. Phillips' opinion was supported by the opinion of Dr. Lubenko of Kings Winery Medical Clinic (AR 469), the ALJ properly rejected the latter opinion. The ALJ noted that Dr. Lubenko's opinion, like Dr. Phillips' opinion, was inconsistent with or not supported by the medical evidence of record. (AR 23). In addition, the ALJ noted that claimant testified that she did not know who Dr. Lubenko was. (AR 23, 83-84).

Claimant argues that the ALJ should have recontacted Dr. Phillips to clarify whether he was making an "accommodation" to claimant.

Although the claimant bears the burden of proof where the evidence in the record is equivocal, the ALJ has a duty to assist in developing the record. *Armstrong v. Commissioner of Social Security*, 160 F.3d 587, 589-90 (9th Cir.1998); 20 C.F.R. § 416.912(a) (instructing claimant that ALJ will consider "only impairment(s) you say you have or about which we receive evidence"); 20 C.F.R. §§ 416.912(d)-(f) (detailing the ALJ's duties to develop a claimant's complete medical history before making a determination of non-disability; to obtain additional information if reports from claimant's medical sources contain ambiguities or are otherwise "inadequate for us to determine whether you are disabled; and to order a consultative examination if unable to seek clarification from medical sources or if "the information we need is not readily available from the records of your medical treatment source"). If the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 416.912(e).

The ALJ was not required to recontact claimant's doctor about her impairment because none of the doctor's treatment notes required clarification. The ALJ had all of Dr. Phillips medical records before him for consideration. These medical records are not ambiguous or otherwise inadequate. The ALJ had the benefit of claimant's treatment records, and x-ray impressions and reports, and the state consultative medical opinions, among other medical records. The ALJ fulfilled his duty to develop fully and fairly the record and to assure that claimant's interests was considered. This Court finds there was no need for the ALJ to request an additional medical opinion from Dr. Phillips.

1    Claimant argues that the ALJ misrepresented the record of Dr. Parayno.

2    The ALJ rejected the treating opinion of Dr. Parayno. The ALJ adequately analyzed and rejected

3  the opinion. First the ALJ noted the opinion:

4    "Dr. Parayno submitted mental health assessments wherein he opined the claimant suffered from depressive syndrome and anxiety disorder which
5    resulted in moderate difficulties in maintaining social functioning, marked restriction of daily living activities, and marked difficulties in
6    maintain concentration, persistence or pace." (AR 24.)

7  The ALJ then contrasted the specific findings of Dr. Paranyo with that of other evidence in the record.

8    "Although Dr. Parayno opined the claimant was isolative and withdrawn, does not socialize outside of her family and has poor interaction with
9    people, this is contradicted by the mental health records which indicates she goes on group outing with her support group and enjoys herself,
10    drives occasionally, shops, visits relatives, and interacts with family on a daily basis." (AR 24.)
11

12  A treating physician's opinion is granted controlling weight only if it is well supported by medically

13  acceptable clinical and laboratory diagnostic technique and not inconsistent with the other substantial

14  evidence in the record. 20 CFR §416.927(d)(2).

15    The ALJ further contrasted Dr. Parayno's finding of limited memory with claimant's playing

16  board games:

17    "While he stated she was unable to remember and carry out simple repetitive tasks, this same record reveals she has the mental capcity to
18    focus and concentrate sufficiently to play various board games and, when engrossed in the game, her symptoms (depression and pain) decreased
19    significantly." (AR 24.)

20  The ALJ further found conflicting evidence between the opinion of Dr. Parayno and the evidence:

21    "Dr. Parayno also reported the claimant does not know her home address or phone number. However, at the hearing, the claimant was responsive
22    and had no difficulty with her memory, in concentrating, or in formulating responses. Moreover, claimant's attorney's questions were
23    for claimant to verify her address and phone number, which she did accurately and without hesitation. Furthermore, I note the claimant
24    regularly walks alone, and there is no indication in the record that she has ever gotten lost or disorientated or had any trouble in finding her home."
25    (AR 24.)

26  It is for the Commissioner to resolve conflicting evidence. *Sanchez v. Secretary of HHS*, 812 F.2d 509,

27  511 (9th Cir. 1987).

28    Claimant argues that the ALJ did not accurately summarize the evidence because the evidence

14

also shows that she isolates herself, requires assistance with activities and demonstrates substantial functional loss. (See, e.g., AR 321.) Here, the ALJ was faced with conflicting evidence and resolved the conflicting evidence. It is not for the Court to resolve this evidence. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## Consideration of Claimant's IQ Tests

Claimant argues that the ALJ failed to properly consider her low IQ scores at Step 3 or Step 5 of the sequential evaluation. (Opening Brief p.5.) She argues that her IQ scores should be reviewed under listing 12.05 or 12.02.

The purpose of the Listings is to describe impairments "severe enough to prevent a person from doing any gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885 (quoting Social Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)). If a claimant meets or equals a listed impairment, he/she is disabled. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). To "meet" a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his/her claim. *Tackett*, 180 F.3d at 1099. To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment. *Tackett*, 180 F.3d at 1099. Medical equivalence must be based on medical findings in the evidence supported by medically acceptable clinical and laboratory diagnostic techniques. *Tackett*, 180 F.3d at 1100; 20 C.F.R. §§ 404.1526(b) and 416.926(b).

The ALJ found that any mental impairment did not meet the Listings. The claimant does not cite to authority for the proposition the ALJ must engage in a particular analysis or issue findings on rejecting a Listing. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[i]t is unnecessary to require the [Commissioner], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments"). Claimant does not argue in what way she meets the Listing.

Claimant also argues that the mental examination tests were culturally biased and should have included culturally sensitive tests. (Opening Brief. P.5.)

1  Indeed, Dr. Engeln administered the TONI III test, which included culturally sensitive components. Dr. Engeln states in his report: "on the TONI III, a visual matching and reasoning test, with the goal of cultural fairness, she achieved an IQ estimate of 70, in the borderline range." (AR 426.) Dr. Engeln opined that the protocol reflects educational retardation and not mental retardation. (AR 25, 427.) The ALJ also noted that "claimant's treating physicians made no such diagnosis of mental retardation." (AR 25.) Moreover, Dr. Engeln conducted a personal interview with claimant, in which she was cheerful, verbally expressive and without evidence of mental or emotional issues. (AR 427.) The Court does not find error.

### **Claimant's Testimony**

Claimant argues that the ALJ merely repeated his credibility finding following remand by the Appeals Council.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148.

The ALJ noted that her pain complaints were inconsistent with the objective medical evidence.

1  (AR 26.) He noted such for particularly her arm, elbow and back pain. While subjective pain testimony
2  cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the
3  medical evidence is still a relevant factor in determining the severity of the claimant's pain and its
4  disabling effects. *Rollins v. Massanari*, 261 F.3d at 857. Moreover, the ALJ noted that claimnt does not
5  receive treatment consistent with chronic pain. (AR 27.)

6  The ALJ also discussed the scope and breath of claimant's activities of daily living. He noted
7  her household chores, social gathering (attended the Asian Hmong New Year Celebration), noted her
8  reported hygiene and grooming. The ALJ noted that she visits her daughter and her grandchildren and
9  her visits with a Hmong support group. He concluded she had a "somewhat normal level of daily
10 activity and interaction." (AR 26.) *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (An
11 ability to take care of personal needs, prepare easy meals, do light housework, and shop for some
12 groceries is inconsistent with the presence of a condition which would preclude all work activity.) If
13 a claimant engages in numerous daily activities involving skills that could be transferred to the
14 workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to
15 those activities. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

16 The ALJ noted that claimant is treated with various medications, including psychotic
17 medications, which do not cause side effects. *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (the
18 ALJ may properly consider effectiveness of medications). Thus, there is substantial evidence in the
19 Record to support the rejection of claimant's subjective complaints.

20 Claimant also argues that "[h]er testimony was ignored in the decision for the most part. Much
21 of it was misstated." (Opening brief, p.6.)

22 Claimant's brief fails to develop these points and the Court will not speculate on them. When
23 an ALJ has made specific findings to justify a decision to disbelieve subjective complaints and the
24 findings are supported by substantial evidence, a court may not second guess the decision. *Fair*, 885
25 F.2d at 604.

26 /////
27 /////
28 /////

**CONCLUSION**

The Court RECOMMENDS as follows:

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Lu Vang Yang.

These findings and recommendations are submitted to United States District Judge Robert E. Coyle pursuant to 28 U.S.C. § 636(b)(l) and this Court's Local Rule 72-304. Within 10 days of the date of service of these findings and recommendations, plaintiff may file written objections with the Court and serve a copy on all parties and the Magistrate Judge in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 16, 2005**            **/s/ Lawrence J. O'Neill**
b9ed48                                              UNITED STATES MAGISTRATE JUDGE